**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JULIE M. TITTL,** | ) | **CASE NO. 1:06CV1411** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **STATE OF OHIO, DEPARTMENT** | ) | |
| **OF MENTAL HEALTH, dba, etc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Amended Motion (ECF DKT #88) of Defendant, State of Ohio, Department of Mental Health, doing business as Northcoast Behavioral Healthcare ("Northcoast"), for Summary Judgment and the Amended Motion (ECF DKT #97) of Plaintiff, Julie M. Tittl ("Tittl"), for Summary Judgment. For the reasons that follow, Defendant's Motion is granted in part and denied in part; and Plaintiff's Motion is denied.

**I. FACTUAL BACKGROUND**

On March 7, 2005, Tittl began working as a Therapeutic Program Worker at the

Northfield Campus of Northcoast.  Her duties included providing direct care services to patients, assisting with admissions, transfers, and discharges, monitoring and documenting patients' vital signs, and providing support for the nursing staff.  Tittl worked full-time from eleven p.m. to seven a.m. on third shift.

Tittl, a Caucasian, was supervised by Clinical Nurse Manager Lynn Veal, an African American.  Veal's supervisor was Jeffrey Sims, an Associate Nurse Executive, and an African American.  Tittl received her assignments primarily from Clinical Nurse Supervisor, Andjelka Ivasic, a Caucasian.  Patricia Davis was a Nursing Supervisor who had input in Tittl's performance evaluation.  Tom Bender was an Administrative Assistant, who agreed to help Tittl get her name on the overtime roster.  The ultimate decision-maker was Chief Executive Officer Paul Guggenheim, a white male.

During Tittl's probationary period, she did not receive any reprimands or suffer any disciplinary action.  She also received a favorable mid-probationary performance evaluation.

On April 28, 2005, Tittl asked Bender how to get on the overtime roster.  Voluntary overtime requests, submitted by employees, were developed into a roster, which was updated weekly based upon what opportunities employees accepted or declined.  When management identified a need for additional staff during a given shift, overtime was offered to individuals on the roster based upon their numerical position on the roster.  If everyone on the roster declined the overtime, management would require someone to work — usually the person with the least seniority. In exchange for working overtime, an employee could receive overtime pay, compensatory time (time off to be used at a later date), or flex time, with supervisor approval. Bender agreed to place Tittl's name on the list, but failed initially to submit her name in time to

update the roster.  Tittl sent Bender an e-mail: "my name & information was not added as you had said it would be . . . please see to it that I'm added."  (ECF DKT #97, Ex. 13).  Once her name was added to the list, Tittl questioned her placement: "Thank you for adding my name to the roster; however, Pat Davis informed me this morning that my name was added to the bottom instead of added to the top of the list." *Id.*  Bender responded that her placement on the list was appropriate pursuant to the union contract. *Id.*

In May of 2005, Clinical Nurse Manager Veal approved all the overtime requests received from Tittl.  Each time, Tittl requested she be paid for the time rather than earn compensatory time.  On June 6, 2005, Veal refused to approve Tittl's request for overtime pay and instead insisted Tittl flex her time.  Tittl complained, pointing to violations of law and the union contract, to her co-workers, union representatives, Clinical Nurse Supervisor Ivasic, and Associate Nurse Executive Sims.  Sims directed Veal to permit employees to elect either to flex their time, accrue paid leave, or accrue overtime pay.  Thereafter, Veal approved Tittl's request for compensation in whatever form she asked.

In her last month of employment, Tittl was significantly late for work two times, June 11, 2005 and June 26, 2005.  On another occasion, June 25, 2005, she was fifteen minutes late.  Northcoast's tardiness policy treats tardiness in excess of thirty minutes as an absence without leave or "AWOL."  Tittl explained that she was exercising her "flex time," which had been approved and/or required by Veal.  There was no documentation to support the flex adjustment.  Tittl alleges her signature on one Flex Time Authorization sheet, dated June 7, 2005, was forged.  In any event, Tittl was never disciplined for her tardiness.

During her employment, Tittl alleges Veal repeatedly spoke to her in a demeaning and

-3-

dismissive manner, and gave her assignments she did not give to African American Therapeutic Program Workers, such as checking for holes in mattresses and cleaning out mailboxes.

At the end of Tittl's probationary period, Veal consulted and solicited comments from Nursing Supervisors. Davis indicated Tittl was not interested in following instructions and was confrontational. (ECF DKT #75, Ex. 3). Davis stated she could not get a straight answer from Tittl; noted Tittl was recently AWOL; and concluded, " I don't get a real good feeling about her." *Id*. Based upon these comments, interpersonal issues, the tardiness incidences, and overtime roster dispute with Bender, Veal prepared an outline, recommending probation removal, i.e., termination, for Julie Tittl. (ECF DKT #89, Ex. 16). The recommendation was forwarded to Sims, who presented it to CEO Guggenheim. Guggenheim approved the removal and turned the matter over to the Human Resources Department.

On June 30, 2005, administrators in Human Resources and Associate Nurse Executive Sims met with Julie Tittl, informed her she was being terminated, and gave her the option of resigning in lieu of termination. Tittl's request for union representation at this meeting was denied. Northcoast considered the final probationary evaluation and any resulting termination to be an issue of performance; and the union contract prohibited union representation in any performance-based meetings. Tittl signed a letter of resignation, effective June 30, 2005.

According to Tittl, similarly-situated African-American employees were not summarily dismissed without first receiving progressive discipline. An African-American probationary employee, Myron Taylor, was terminated ***only after*** receiving prior written and oral reprimands for attendance, safety issues, and inappropriate conduct. Another African-American probationary employee supervised by Veal, Omelia Tinsley, was not terminated, though she

complained about the overtime practices, had interpersonal issues, and was disciplined for attendance problems. At the time of her own discharge, Tittl did not mention she believed she was the victim of race discrimination, or that she was being disciplined for complaining about the overtime policy as enforced by her supervisor, Veal.

The instant action was instituted on June 8, 2006. Leave to file an Amended Complaint was granted on November 30, 2006; and the amended pleading alleges reverse race discrimination, Fair Labor Standards Act ("FLSA") violations, and FLSA/wage and hour retaliation. After Tittl's original counsel withdrew, new counsel entered an appearance on May 1, 2007. Motions for Summary Judgment, filed and amended by both parties, followed.

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion for Summary Judgment**

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party

may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005). This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*., 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## FLSA and FLSA Retaliation Claims

Plaintiff Tittl alleges Defendant Northcoast failed to compensate her for all of her hours worked in excess of forty hours, in violation of 29 U.S.C. § 207(a)(1). She claims eighty-nine hours in a six-week period went uncompensated.

At her deposition, Tittl also testified concerning Veal's refusal, on more than one occasion, to accept Tittl's requests for overtime compensation. (ECF DKT #10). Instead, Veal allegedly forced Tittl to utilize "flex time," which required her to start or finish work later than her scheduled hours. Id. After Tittl complained to supervisors and union representatives, Veal

-6-

was instructed by Sims to cease that practice and allow the individual employee to elect the desired form of overtime compensation. Tittl's removal was recommended by the very supervisor who refused her overtime compensation, Veal. Furthermore, Tittl was terminated within a month of her complaints to management about Veal. Thus, Tittl asserts a claim for retaliation under the FLSA.

The FLSA, passed by Congress in 1938, requires certain employers to pay their employees a minimum wage and also to pay them one and one-half times their regular rate of pay for hours worked in excess of forty during one week. 29 U.S.C. §201, *et seq*.

Defendant, State of Ohio, doing business as Northcoast, contends Tittl's FLSA and FLSA retaliation claims are barred in their entirety by the immunity granted through the Eleventh Amendment of the United States Constitution. The Eleventh Amendment protects states from suits brought in federal court by private citizens for a violation of a federal law. Congress's power to regulate commerce is insufficient to abrogate state sovereign immunity. *Wilson-Jones v. Caviness*, 99 F. 3d 203, 207 (6th Cir. 1996) (subsequent negative treatment on other grounds, i.e., " no longer good law" when it comes to its statement that sovereign immunity is jurisdictional in the same sense as subject matter jurisdiction). However, Congress possesses enforcement authority under the Fourteenth Amendment, which may be found to abrogate a state's immunity. *Id.* at 209; *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Division*, 227 F. 3d 627, 634 (6th Cir. 2000)(rehearing *en banc*, 276 F. 3d 808 (6th Cir. 2002), but same reasoning constraining Congressional enforcement of Equal Protection Clause). Nevertheless, the commendable aim of the FLSA — to increase the wages and shorten the hours of certain employees — does not rise to the level of remedying discrimination against a

class of persons deserving protection under the Fourteenth Amendment. *Wilson-Jones*, 99 F. 3d at 210. As the *Popovich* court opined, "admirable, even desirable goals are not always consistent with constitutional limitations; in such cases, we are bound to follow the constraints of the Constitution." *Popovich*, 227 F. 3d at 642. Congress, by the enactment of the FLSA, has not abrogated the State of Ohio's Eleventh Amendment immunity. *Wilson-Jones,* 99 F. 3d at 211. While not disputing the substantive Eleventh Amendment argument, Tittl contends Northcoast waived their right to assert it. The Court disagrees. The Eleventh Amendment defense was asserted in a timely fashion in Defendant's Answer to Plaintiff's First Amended Complaint. (ECF DKT #16). In addition, Defendant did not choose the federal forum by removing the within matter. Rather, Defendant was brought before this tribunal involuntarily by Plaintiff's original action.

(Plaintiff argues, in the alternative, this Court has supplemental jurisdiction over a wage and hours claim under Chapter 4111 of the Ohio Revised Code. This argument is untenable, since Plaintiff's Amended Complaint does not allege such a claim arising under Ohio law. Plaintiff never sought leave to amend her Complaint a second time. She cannot raise a cause of action for the first time by way of a dispositive motion, thereby depriving Defendant of notice and opportunity to defend.)

In view of the law in this Circuit, and finding no waiver of the defense, this Court agrees with the position of Defendant. Northcoast is entitled to summary judgment on Tittl's FLSA and FLSA retaliation claims on the basis of sovereign immunity.

**Reverse Race Discrimination**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. makes it unlawful

for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination." *DiCarlo v. Potter*, 358 F. 3d 408, 414 (6th Cir. 2004). "Mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F. 3d 243, 247 (6th Cir. 1997).

Since Plaintiff Tittl is without direct evidence of discrimination, the Court will apply the *McDonnell Douglas/Burdine* burden-shifting analysis. It is plaintiff's burden to prove a *prima facie* case of discrimination by his or her employer. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, (1981). Upon plaintiff making a *prima facie* showing of discrimination, the burden "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253, (quoting *McDonnell Douglas,* 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

To establish a *prima facie* discrimination claim, Plaintiff must show: (1) that she is a member of a protected class; (2) that she was subject to an adverse employment decision; (3) that she was qualified; and (4) other employees of similar qualifications who were not members of

the protected class were treated differently by the employer. *McDonnell Douglas*, 411 U.S. 792; *Sutherland v. Michigan Dept. of Treasury*, 344 F. 3d 603, 614 (6th Cir.2003); *Wade v. Knoxville Utils. Bd.*, 259 F. 3d 452, 461 (6th Cir. 2001); *Kline v. Tennessee Valley Auth*., 128 F. 3d 337, 349 (6th Cir. 1997). In adapting this four-prong test to cases of reverse discrimination, where a member of the majority claims discrimination, the Sixth Circuit has held " a plaintiff satisfies the first prong of the prima facie case by "demonstrat[ing] 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Pierce v. Commonwealth Life Ins*.,

40 F. 3d 796, 801 (6th Cir. 1994). "To satisfy the fourth prong in a reverse-discrimination case, the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Leadbetter v. Gilley*, 385 F. 3d 683, 691 (6th Cir. 2004); *Sutherland*, 344 F. 3d at 614. Specifically, Tittl must show that Northcoast treated similarly-situated males and non-whites differently than she. *Vitt v. City* of *Cincinnati*, 97 Fed. Appx. 634, 639 (6th Cir. 2004), citing *Sutherland, supra*. The burden of establishing a *prima facie* case under *McDonnell Douglas* is not onerous. *Burdine*, 450 U.S. at 251.

There is no dispute between the parties regarding Tittl's qualifications, or that she suffered an adverse employment action, i.e., asked to submit her resignation rather than be terminated. Thus the second and third prongs of the *prima facie* case are satisfied.

**Background Circumstances**

As previously outlined, the first prong requires Tittl to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." Tittl's immediate supervisor, Lynn Veal, is an African-

American.  Veal had the responsibility of approving Tittl's overtime requests; and for a time, Veal compelled Tittl to take "flex time" instead of monetary compensation.  (ECF DKT #83, Ex. 10)  Veal "targeted" Tittl and gave her demeaning assignments she did not give to African-American Therapeutic Program Workers.  (ECF DKT #83, Ex 10).  At the close of Tittl's probationary term, as was the normal practice at Northcoast, Veal consulted with other Nursing Supervisors and solicited their comments about Tittl's performance.  (Defendant's Motion for Summary Judgment, ECF DKT #82, p.13).  Upon compiling those comments and adding her own evaluations, Veal forwarded her recommendation of termination to Associate Nurse Executive, Jeffrey Sims, an African-American.  Sims presented the recommendation to the ultimate decision-maker, CEO Paul Guggenheim (a Caucasian male), who approved removal and referred the matter to Human Resources.  Similarly-situated African-American employees were not dismissed without prior or oral written warnings.  (ECF DKT #83, Ex. 8).

Plaintiff Tittl has presented evidence, therefore, that "capricious discrimination against whites because of their race may be likely."  *Zambetti v. Cuyahoga Community College*, 314 F. 3d 249, 256 (6th Cir. 2002) (quoting *Parker v. Baltimore and Ohio Railroad Co.*, 652 F. 2d 1012, 1018 (C.A.D.C. 1981).  Also, by demonstrating her supervisors and evaluators who supplied recommendations to the decision-maker were predominantly African-American, Tittl has satisfied the "background circumstances " requirement of her *prima facie* case.  *Zambetti*, 314 F. 3d at 257; *Gardner v. Wayne County*, 520 F. Supp. 2d 858, 865-66 (E.D. Mich. Aug. 21, 2007).

**"Similarly-Situated"**

To satisfy the fourth prong of her prima facie reverse race discrimination claim, Tittl must demonstrate that similarly-situated African-American employees were treated more

-11-

favorably than she.  To be deemed "similarly-situated," the comparable employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 583 (6th Cir. 1992).  "The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 352 (6th Cir. 1998) (citing *Pierce v. Commonwealth Life Insurance Co.*, 40 F. 3d 796, 802 (6th Cir. 1994).

Plaintiff Tittl points to two African-American probationary employees, under Veal's supervision, who were treated more favorably than she was.  Myron Taylor was terminated, but only after receiving either oral or written reprimands for attendance problems, safety issues, and inappropriate interpersonal conduct.  (ECF DKT #76, at p. 85)  Omelia Tinsley was not terminated despite complaining about the overtime compensation policy, and despite her attendance violations and interpersonal issues.  (ECF DKT #69, at pp. 43-44).

After examining all the relevant factors, this Court finds Tittl has satisfied her burden of identifying similarly-situated individuals with whom Tittl could be compared for purposes of establishing a *prima facie* case of reverse race discrimination.

**Legitimate Non-Discriminatory Reason**

To meet its burden Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981).  "The burden that shifts to the defendant, therefore, is to rebut the presumption of

-12-

discrimination by producing evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason.  The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id*. at 254.  *See, Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978). " It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id*.

> To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the  plaintiff will have a full and fair opportunity to demonstrate pretext.

*Burdine*, 450 U.S. at 254.

As a probationary employee, Tittl was expected to be punctual.  Referencing the depositions of Veal, Bender and Davis, Northcoast notes Tittl was tardy on three separate occasions, and failed to follow procedure with respect to explaining her tardiness.  Further, according to management, Tittl had difficulty communicating with her co-workers.  Supervisors, like Davis, believed Tittl was confrontational and unwilling to follow rules and direction.

Thus, Northcoast has satisfied its burden of production; and a reasonable trier of fact could infer Northcoast had a legitimate, non-discriminatory reason for terminating Tittl's employment.

**Pretext**

The burden now shifts back to Plaintiff to demonstrate, by a preponderance of the evidence, that Defendant's proffered reasons for the adverse employment action were pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact,

-13-

(2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F. 3d 1016, 1021 (6th Cir. 2000). Pretext can be established by noting inconsistencies in the proffered reason for the adverse employment action. *Tinker v. Sears, Roebuck & Co.*, 127 F. 3d 519, 523 (6th Cir. 1997. "Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain." *Singfield*, 389 F. 3d at 564, quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). "We agree that caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfield*, 389 F 3d at 564.

Plaintiff Tittl cites to sworn deposition testimony and argues Northcoast's stated reasons were insufficient to motivate discharge. Tittl was never disciplined for any attendance or interpersonal issues. Her mid-term evaluation, conducted by Veal, was favorable. (ECF DKT #76 at pp. 80-81and 182-183). Veal admitted the process leading up to her recommendation to terminate Tittl was, by its nature, subjective, i.e., based upon her observations and the comments she solicited from other nursing supervisors. (ECF DKT #76 at pp. 81, 84, 88-91, 94-95, 107). Tittl did not receive oral or written warnings, nor an end-of-term evaluation, while similarly-situated African-American employees did. (ECF DKT #76 at pp. 83, 85).

In light of this Court's obligation to exercise caution when analyzing pretext, and in consideration of the evidence submitted by Plaintiff Tittl, the Court finds Tittl has demonstrated a genuine issue of material fact that Defendant Northcoast's proffered reasons for terminating her employment did not actually motivate Northcoast's challenged conduct.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part as to the FLSA and FLSA retaliation claims, and denied in part as to the reverse race discrimination claim. As there is a genuine issue of fact with regard to pretext, Plaintiff's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

**DATE: March 17, 2008**

     **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**